UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DANIEL M. CAMPBELL,**

               **Plaintiff(s),**       CASE NUMBER: 08-11651
                                                 HONORABLE VICTORIA A. ROBERTS

**v.**

**COMMISSIONER OF SOCIAL SECURITY**,

               **Defendant(s).**
_____/

**ORDER**

**I.   INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment (Doc. #11 and Doc. #17). The Magistrate Judge recommends that the Court GRANT Defendant's motion and DENY Plaintiff's motion.

The Court **DECLINES TO ADOPT** this recommendation.

**II.   PROCEDURAL HISTORY AND FACTS**

The Magistrate Judge adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

**III.   STANDARD OF REVIEW**

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the Administrative Law Judge's decision to determine whether it is supported by "substantial evidence." "Substantial

1

evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way.  *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  This standard presupposes that there is a "zone of choice" within which the Administrative Law Judge ("ALJ") may make a decision without being reversed.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  In other words, if the Commissioner's determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently.  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations.  *Id.*

**IV.    ARGUMENTS**

There are five factors the Social Security Administration uses to determine eligibility for benefits.  Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration.  If Plaintiff does not meet his burden at step three, he may still meet his burden at step four by proving he did not have the "residual functional capacity" ("RFC") to perform past work.  *Jones v. Comm'r of Soc. Security*,

336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies his burden, the burden shifts to the Commissioner for the fifth factor to show there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

### A. Plaintiff's Claims

Plaintiff Daniel M. Campbell seeks disability benefits from August 12, 2004 for back pain. He suffers from multiple sclerosis and has other ailments. Plaintiff's past work experience includes employment as a prototype mechanic and a crane operator. When he applied for benefits, Plaintiff was 45 years of age.

Plaintiff claims he: (1) has constant pain in his back and side; (2) lost feeling in his hands, feet, legs, and arms; and (3) is always tired. Tr. 312-313. Plaintiff takes five types of medication. Tr. 314. According to Plaintiff, the pain medication blurs his vision, causes dizziness, and makes him tired. Tr. 314, 322, 327. Plaintiff says he has to rest for approximately one hour after taking his medication. Tr. 323.

Plaintiff testified that he: (1) can only stand for one hour per day in 15 minute increments; (2) can only sit for an hour at a time; (3) has trouble tying his shoes; (4) cannot repeatedly lift a gallon of milk; (5) cannot bend, squat, or stoop; (6) trips climbing up stairs; (7) cannot pick up a coin on the table because he does not have feeling in his

fingers or hands; (8) has trouble sleeping because he has to change positions; and (9) does not dust, mop, vacuum, do laundry, wash dishes, shovel snow, or shop for food. Tr. 314-315, 318, 320-321, 325-326.

Despite his problems, Plaintiff can: (1) drive two miles at a time (although he drove 40 miles to the hearing); (2) walk approximately 100 yards on a good day (although he has to take short breaks) and from the bedroom to the kitchen on bad days because his feet are numb and his left leg is weak; (3) lift 15 pounds; (4) climb the stairs in his house twice a day; (5) hold a coffee cup (although he spills a lot); (6) write (although his handwriting is not as good as it used to be); (7) attend auto racing twice a year; (8) "tinker" with cars; (9) groom himself; (10) mow the lawn on a tractor; (11) eat out a couple times per week; and (12) attend church on holidays.  Tr. 309, 315-316, 320-322, 327-328.  Plaintiff used to prepare meals, but his daughter cooks and cleans now.  Tr. 320.

### B.     Magistrate's Recommendation

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to assume an individual of Plaintiff's age with the same educational background and work history who:  (1) is restricted to sedentary work; (2) cannot lift more than 15 pounds; (3) has to sit every 45 to 60 minutes for five to 10 minutes; (4) has to stand hourly; (5) can occasionally climb ramps or stairs, but cannot climb ladders, ropes or scaffolds; (6) can occasionally balance, kneel, crouch, crawl, bend or twist; and (7) can occasionally use foot controls.  The VE testified that such individual could work as a cashier (7,200 available jobs), information/reception clerk (3,200 available jobs), or sorter/packager (1,400 available jobs).  Tr. 330-331.

In another hypothetical, the ALJ added the restriction that the individual could not bend or stoop. The VE testified that these restrictions would not impact the numbers. Tr. 331.

Finally, the VE testified that Plaintiff would not be able to perform any of the jobs she identified, if the ALJ found Plaintiff's testimony regarding his limitations entirely credible and supported by the evidence. Tr. 331-332.

The ALJ determined that Plaintiff's multiple sclerosis and degenerative disc disease were "severe" based on the requirement in 20 C.F.R. §404.1520(c). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. She found Plaintiff's allegations regarding his limitations were not fully credible and concluded that Plaintiff retains the RFC to perform sedentary work that has a sit/stand option; the ability to change positions every 45 to 60 minutes for five to 10 minutes; does not involve climbing ladders, ropes, or scaffolds; only occasionally involves climbing stairs, balancing, kneeling, crouching, crawling, bending, and twisting; and occasionally requires the operation of foot controls. Although Plaintiff's exertional limitations do not allow him to perform the full range of work at this level, the ALJ found there are a significant number of jobs in the national economy Plaintiff can perform. From this, the ALJ concluded Plaintiff was not under a "disability" as defined in the Social Security Act.

The Magistrate recommends the Court uphold the decision. He says: (1) the ALJ correctly used a two-step process to evaluate Plaintiff's symptoms and make a

5

credibility determination; (2) the evidence supports the ALJ's RFC finding, excluding a stooping limitation; (3) even if the evidence demanded that the ALJ find a complete inability to stoop, Social Security Ruling 96-9p does not require a finding of disability in every case; (4) the ALJ complied with Social Security Ruling 96-9p by considering a stooping limitation, asking the VE about it, and learning that it would have no effect on the occupations the VE identified; and (5) the ALJ gave Dr. Gerald Riess's opinions the proper weight.

### V.     PLAINTIFF'S OBJECTIONS AND ANALYSIS

Plaintiff seeks remand.  He says: (A) the Magistrate Judge did not review the impact of the lumbar radiculopathy; (B) the ALJ did not include his inability to stoop in the hypothetical to the VE; (C) the VE's testimony that the jobs she identified would not be affected by an inability to stoop contradicts Social Security Ruling 96-9p; and (D) the ALJ did not explain why she did not give Dr. Riess's opinions controlling weight.

Defendant did not respond.

With the exception of Plaintiff's objection concerning Dr. Riess, the Court overrules them for the reasons stated below.

#### A.     Lumbar Radiculopathy

Whether the Magistrate Judge reviewed the impact of Plaintiff's lumbar radiculopathy is immaterial; the question is whether the ALJ did so.

The Court finds the ALJ considered Plaintiff's lumbar radiculopathy.  Indeed, she found Plaintiff's degenerative disc disease was a "severe" impairment.

#### B.     Plaintiff's Inability to Stoop

1.      **Flawed Hypothetical**

While the inability to stoop was not included in the first hypothetical, as Plaintiff argues, the ALJ did include it in the second hypothetical to the VE: "if I were to add in a restriction of no bending or stopping[sic], how would that affect the numbers?" Tr. 331.

2.      **Social Security Ruling 96-9p**

The ALJ found Plaintiff could not perform a full range of sedentary work. When he applied for social security benefits, Plaintiff says he was under the age of 50 and was unable to stoop. Plaintiff says the ALJ's finding, his age, and his inability to stoop command that Social Security Ruling 96-9p be followed and that a finding of disability be made.

>   Plaintiff has a flawed understanding of Social Security Ruling 96-9p. It says:
>
>   An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare.

It also says, "[t]he impact of an RFC for less than a full range of sedentary work is especially critical for individuals who have not yet attained age 50," and, "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." *Id.* With respect to stooping, 96-9p says, "A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply[.]" *Id.* (Emphasis in original).

Even if the ALJ found Plaintiff lacked the ability to stoop, it does not follow that Social Security Ruling 96-9p requires a finding of disabled, as Plaintiff claims:

>   a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of "disabled."

> If the performance of past relevant work is precluded by an RFC for less than the full range of sedentary work, consideration must still be given to whether there is other work in the national economy that the individual is able to do, considering age, education, and work experience.

*Id.*

To determine whether there is other work in the national economy that Plaintiff can perform, Social Security Ruling 96-9p recommends the ALJ consult a vocational resource. *See id.* ("Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.").

The ALJ properly consulted a VE. Plaintiff's attorney agreed the person was qualified as a VE. Unfortunately for Plaintiff, the VE testified that a "no stooping" restriction would not impact her finding that Plaintiff could perform work as a cashier, information/reception clerk, or sorter/packager.

### C.     Treating Physician's Opinions

Plaintiff contends the ALJ did not explain why she did not give Dr. Riess's opinions controlling weight, and that she did not consider all of the factors outlined in 20 C.F.R. §404.1527(d). This objection has merit.

In a letter dated March 18, 2005, Dr. Riess said, "I still do not feel [Plaintiff] can return to work without significant work restrictions of no lifting over 15 pounds, bending, or stooping. I feel that these work restrictions are most likely permanent."

In a questionnaire from Plaintiff's counsel to Dr. Riess dated September 1, 2005, Dr. Riess indicated that Plaintiff's manual manipulation is limiting, and he did not believe Plaintiff would be capable of working a regular 40-hour a week job due to fatigue.

20 C.F.R. §404.1527(d) says:

Unless we give a treating source's opinion controlling weight . . ., we consider *all of* the following factors in deciding the weight we give to any medical opinion:

(1)  *Examining relationship.*  Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2)  *Treatment relationship.*  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . .  When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i)  *Length of the treatment relationship and the frequency of examination.*  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.

(ii)  *Nature and extent of the treatment relationship.*  Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion.

(3)  *Supportability.*  The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.

(4)  *Consistency.*  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5)  *Specialization.*  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6)  *Other factors.*  When we consider how much weight to give to a medical opinion, we will also consider any factors you or others

> bring to our attention, or of which we are aware, which tend to
> support or contradict the opinion.

(Emphasis in first paragraph added).

While the ALJ indicated that Dr. Riess is Plaintiff's treating physician, she did not give Dr. Riess's opinions controlling weight and failed to state why she did not do so, in accordance with 20 C.F.R. §404.1527(d). The only factors the ALJ considered were consistency and the frequency in which Plaintiff visits Dr. Riess (every 2-5 months). It is not clear that the ALJ considered the length of the treatment relationship, the nature and extent of the treatment relationship, supportability, whether Dr. Reiss is a specialist, and any other factors which tend to support or contradict Dr. Riess's opinions. In addition, there is no discussion about Dr. Riess's opinion that Plaintiff's manual manipulation is limiting. The ALJ must make a record that she considered the factors outlined in 20 C.F.R. §404.1527(d), since the regulation seems to require controlling weight status or consideration of all of the factors.

Consideration of these factors may not change the ALJ's determination. However, the Commissioner must follow its own regulations.

## VI.   CONCLUSION

The Court **DECLINES TO ADOPT** the Magistrate's Report and Recommendation. This matter is **REMANDED** to the Commissioner for a more detailed explanation of why Dr. Riess's opinions in the questionnaire dated September 1, 2005 (including Dr. Riess's opinion that Plaintiff's manual manipulation is limiting), and Dr. Riess's March 18, 2005 opinions were not given controlling weight. The Commissioner must provide an analysis of all the factors in 20 C.F.R. §404.1527(d). In the alternative,

it appears the Commissioner could give Dr. Riess's opinions controlling weight.

**IT IS ORDERED**.

                                                        s/Victoria A. Roberts
                                                        Victoria A. Roberts
                                                        United States District Judge

Dated: August 27, 2009

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 27, 2009.
>
> s/Linda Vertriest
> Deputy Clerk